Good morning, Your Honor. Lauren Brennan appearing on behalf of the Plaintiff and Appellant Glenn Friedman. I'd like to reserve three minutes after the end of my speech for rebuttal. There were three issues that I think we need to address here to state them simply. First of all, was there substantial evidence that could have sent to the case to the jury in order to address the question of willful infringement? Secondly, was there substantial evidence to send to the jury the issue of the CMI violation? And number three, did the trial court commit error in creating its mass marketing exception to the statutory damages rule? So let me look at each one of these things if I may. First issue is, was there sufficient evidence to send to the jury the question of willful infringement? Two aspects of that. The evidence we presented and their approval procedure. Evidence we presented showed at the trial court hearing, defendants had stipulated to infringement that included copying. We have exact copies of both the calendars and the t-shirts. Exact copying leaves an inference, a strong inference of copying. Brahma Jade testified that she knew that Glenn Friedman had taken pictures of DMC, knew that Glenn Friedman had to have his rights cleared, but artist had a deal with Glenn Friedman and that they had to clear rights, but she never bothered to ask Run DMC if they also had that procedure. They sent an approval form that they relied on and that they never said in the approval form that Run DMC was clearing the rights of Glenn Friedman. But I think the most, in my mind, the most damning evidence of willful infringement is their approval procedure. How can anybody believe that asking the third party for approval clears the rights of a defendant? If I may, since we're in short time, if I make an example, if I were to tell one of the justices of this court, you know, your honor, I need a ride home. I'm taking your car. And by the way, Mr. Lynn said I could do it. Would anybody believe that that had been given me permission to take a car of somebody else? And if I argued that didn't create intent, would that be evidence that the procedure was reasonable? Reasonableness of the approval proceeding under peerless had to be proven by the defendant. Yet the trial court said that plaintiff had to prove it was unreasonable. One thing that is, to me, kind of odd about this case is that as far as I could tell, you never tried in discovery to ask them where they got the images from. We, when they came to the images, Brahma Jade had not been, her address had not been disclosed in discovery, so we couldn't ask her. Well, you could, but you could have asked in interlocutories, where'd you get the images from? But they didn't. Yeah. As far as I know, that wasn't asked. No, it wasn't, which is a fairly important question. And then they never said where they got the images from. So you have this huge hole in the record, which would solve everything if anybody wanted to tell us. Right. We asked, the president of the Live Nation said, well, I went and asked everybody and everybody said, I don't know. Well, no, he didn't say that. He said, I didn't discover any evidence that they had taken it. Right. I didn't discover any evidence that they had taken it. And you never tried to depose him to ask him what he meant, what he did, who did he ask or anything like that? I don't think that deposition was taken, no. I'm sorry? I don't believe that deposition was taken, no. But your argument, though, is that despite perhaps not the strongest evidence at the time to infer, look, these photos were not yours, you had them, and maybe the jury rejects your theory or maybe the jury says it must have been me. That's all I'm issuing. I think it's an issue of fact for the jury, whether or not they accept or reject this. But I think the most important thing is this approval procedure. The defendants told us we got an approval procedure. This procedure is just unreasonable. No one could believe that a third party would give approval for the copyright owner's rights. And they didn't ask him who had the copyright. Pardon me? They didn't ask on this approval form who has the copyright. No. Do you have the copyright? Yeah, they didn't ask that. If Your Honor will allow an author a little moment of vanity. I wrote a treatise on this here on copyright licensing law. You have a copy in the Ninth Circuit in 2005. It's got a whole chapter on approval procedures. And one of the things I said in 2005 is photographs. Photographs require clearance checking. Permission may be required from the photographer, the copyright owner, and any recognizable person or object shown in the photograph. Somebody would have known that you can't just ask somebody who appears in the photograph and assume that's clearance. You have to ask the copyright owner. And nobody asked that. So the question is whether that's sufficient to go to the jury to say that there was willfulness. And this would be evidence of. And willfulness in this context includes recklessness. Recklessness and includes recklessness. It includes knowing disregard or knowing ignorance. And so that's what we would say is this. We should be able to send this to the jury. Counsel, could I fast forward to your third point? Yes. On the issue of statutory damages. Right. Because I will say for me, this is the hardest question in the case. Right. I have a hypothetical. So just bear with me for a second. All right. So we just had the Super Bowl. Okay. Hundred and eleven million people watched it. I'll make it a hundred million to make the math easy. Right. But let's say some computer company has a promotion. They advertise it in the Super Bowl. Go to our website, download your four favorite NFL players and take a selfie of yourself on your phone and maybe you'll win a prize. So 50 million people download four photos from this website. Turns out through not a willful mistake, a clerical error. The four photos, in fact, are not licensed properly. They were infringed. Walk with me on your theory of the damages. So we have 50 million people each downloading four photos that did not have the proper license. Okay. Two things to be clear here. Remember, the downstream person also has to be an infringer. So I'm going to assume that when these 50, if I'm just a consumer and I buy infringing goods, that's not an infringing act, so I haven't done it. So I'm going to assume that what happened is each of these four people, each of the 50 million people are actually also infringers. In other words, they were told, make a selfie. You have authority to do it. And then each one of these 50 million people could be sued for infringement. Right. Okay. So I'm going to assume that here. What does the statute say? Statute says one statutory damages for one act of infringement here. So if it was, if these consumers were not infringers, I get one statutory damage. Actually it says all infringements involved in the action. Right. But now we've assumed that each of these consumers is not merely a passive recipient. They are also an active infringer. In principle, I could go and sue each consumer for taking the selfie and putting it on the air. Okay. So since two consumers are not jointly and severably liable with each other, I should get a statutory damage from A in each consumer. You've said that there are 50 million consumers. Yeah, that's a lot. Well, let me ask you, I mean, and here's where I am on this. And I also find it the hardest issue in the case. The Columbia Pictures analysis seems to support you and it would seem odd to have a separate rule for if there are a lot of infringers or a few infringers. But so that leads to two possibilities. A, Columbia Pictures is wrong as to the statutory language. Or B, and the one thing that was true in Columbia Pictures that isn't true here is that there was a determination that the down the line entities were also infringers, right? Here, what we have, we don't, those other people are not in this case. Right. Correct. So what does it mean to say that somebody, two or more infringers are liable jointly and severally when nobody has declared them to be liable jointly? That's the issue here. We couldn't even get to the proof of that because the judge wouldn't even do that. And that's... You mean that you're, even though they're not in a lawsuit and you haven't sued them, I mean, liable usually means have been held to be responsible judicially. They haven't been held to be responsible judicially and you're not seeking to hold them responsible judicially, right? I have joint and several liability. If there's joint and several liability, I don't have to sue both parties. Why not? Because one party is liable. I have to prove the act. So I would have to prove that the act... You don't have to prove that the other people are also liable? Well, I think I have to, I have to show that the other people, the other retailers sold infringing merchandise. Sure. I don't have to prove also that they didn't have any licenses. They could have had licenses. But, well, sure we could prove they didn't, but they certainly didn't have any licenses from Friedman. That's an easy thing. How do we know that? Because Friedman didn't give anybody a license to do this. I mean, you'd have to prove all that, right? Obviously I have to prove all this. When I get to the trial, I'm going to prove all this. But right now, what this court said is you don't even get the chance to try to prove it. And all we're saying is I should get the chance to try to prove that. Do you think the assumption here was that these other people at least were also in the case? And there were infringers who were, who were parties to the case, not just infringers in the sky? I'm not sure I understand. In other words, the statute says for any, for which any two or more infringers are jointly liable, liable jointly and severally, right? Now the one infringer who was liable individually, presumably is somebody, is a defendant in a lawsuit, not just some infringer. And, and I would think that these people also are part defendants in the lawsuit. They're not just some infringers off in the sky. I would, no, I think that for joint and several liability, I don't need to sue the other parties. I'm going to have to show to the court that they... I mean, that, that's the one big distinction between this case in Columbia, other than the size, the number of people. Sure. But I think that if I may say here that I think there's something too important to remember here too. The statutory damages awards are not automatically you get the maximum. The jury can always adjust the statutory damages awards between the minimum and maximum based upon whether they see the other parties here. Right. But in the example I was giving... I want to get to back to that. Exactly. So we have 50 million people, each one downloads four, we're assuming they're infringers, 200 million times minimum 750? Could be, yes. So we're talking about, you see the concern, that's a judgment bigger than any, I mean, it's bigger like what Germany paid back in World War I. I mean, this is this kind of money here. Right. But there have been, there are cases here right now under the CMI provisions here, in which if you read the CMI provisions in 1202, a violation of 1201 is up to $25,000 in infringement. And the courts have said, this is what Congress said. There was an $87 million judgment issued for some violations here. Mr. Brennan, I totally agree with Judge Owens. I was looking at this case and I said that if your client had received the proceeds from all of these sales, that, you know, they didn't even have to pay for the manufacturer of the T-shirt or the cowls, he got everything. He wouldn't have made what you're asking for in this case. This is the ultimate windfall. There, I want to know where in the statute that the type of windfall that you're contemplating is envisioned. If I may, well, I know windfall, if I may, the statute says I get that the copyright owner is entitled to statutory damages for each parties that are jointly and severably liable. I just want to say that I have the right to go to the court and show that I get for each of the retailers, I need to show that they are engaged in an infringing act, and I don't know why I need to join them in a lawsuit to do that. That's an immense expense for the plaintiff when they would be jointly and severally liable anyway. I only need to sue one party. Okay, I see this, and I know you want to reserve time. Let me ask you this question. If we agree with you on the first question, that it was wrong to grant summary judgment on the willfulness issue, do we have to decide this, I'll say, the statutory damages, do we have to decide that, or can that be sent back because if it's willful, actually, the statutory damages would be higher? Right. All we're asking is the numbers question. If you decide that this- Because if you had, if it were willful, there would just be a higher version of the same problem. Higher version of the same problem, but we're not, if you decide it was willful, you're not necessarily deciding this is statutory damages. Because remember, it may well be that each of these individuals wasn't willful. But we aren't deciding whether it was willful. We're deciding whether the question of willfulness should have been determined by a jury. Right. Yeah. We're just deciding now the willfulness issue. And with regard to the statutory damages, all we're saying is we just want a right to go to the jury and present it. We're not going to be able to say, well, somebody sold it there. We're going to have to show that they were infringing and there was infringing condom. Do we need to, though, give some instructions to the district court? I like instructions to the district court. You need to send some instruction to the district court as to the scope of what the damages can be. I think that the, well, remember, the district court here has discretion here to review this. There is one case, I think it's Feltner, that says if these damages are too high, the district court does have some, some of the amendment issue about the damages are too high. I don't want to go there because I don't even think that's going to happen because it may well be the jury looks at this and say, okay, you have 33 defendants, a thousand dollars each. So. Statutorial language for a minute. And, um, I mean, to me, this, this question here is, do we try to, to, to essentially call it on bank about Columbia? When you say for which any infringer is liable individually, I mean, the language is extremely opaque, right? It's for all infringements involved in an action with respect to any one work. So it's clear that we're aggregating all infringers. Then the question is, are we aggregating all infringers, um, for which any one infringer is liable individually? And that doesn't say that if one infringer is liable individually, and each person who's liable individually has a separate statutory damages, it could be read to say, and this is what I understand, um, your opponents to be saying is that as long as one infringer is liable individually, then there's still only one statutory damages. And if any two infringers are liable jointly or separately, it's still only one statutory damages. Now it would have to be uniform. You would have to say the same thing with respect to individual infringers or, um, or two or more infringers in liable, but what's wrong with that? Remember, we have infringer A, infringer A licenses to B, licenses to C. Okay. If I sue infringer A and infringer B, then I get one statutory damages for that. If I also filed a lawsuit and I add infringer C into the lawsuit, I get a statutory damages. That's the question, not the answer. No, but, but the, but what the statute is saying is that for each, for any two or more infringers are liable jointly and separately. So if I have two infringers that are jointly and separately liable, I get one statutory damages. It doesn't say that, that, that each, each of those infringers are going to have a judgment against them. It says for which, so in other words, um, it's, it's all infringements for which any two or more infringers are jointly and separately liable. Okay. Or any one infringer. For which any two or more infringers are liable. So, but if I sue two defendants, I get a judgment against them jointly and separately. Either one of them can satisfy the judgment and I can go after either one to satisfy the judgment. Yeah, but you're not answering my question about the statutory language. So maybe I'm, I apologize, Your Honor. Maybe I'm not understanding. All right. It is possible, I think, to read the statutory language and I understand that this is what Live Nation is asking us to do, as totally an aggregation statute on the damages. In other words, no matter how many infringers there are, no matter whether they're individual or joint and several, um, for, um, all infringements involved in an action with respect to any, if any one infringer is liable or for which any two or more infringers are jointly liable, there's still only one statutory damage. Two problems with that. If that's what it said, then the statute would simply say with respect to any one work, period. You can have, it doesn't matter how many infringers there are, you wouldn't have those phrases. For all infringements, for any one work, for all infringements, right? Damages involve the action with respect to any one work. It would say, period. You wouldn't need anything else there because it would be one, the work is infringed, didn't matter how many, many. So then you wouldn't need this sentence. And if I may suggest that's writing that language out of the statute. Okay. So that's the first problem with that. The second problem is you've got to look at the incentives here. The incentive is to stop this mass marketing exception. If I may take your honor's example again about the Super Bowl. Yes, it sounds very serious that somebody is potentially on those assumptions, getting all that money. But the other side, look at what the copyright owner lost. The copyright loaner lost the potential to make all of those sales. That is such marbling pointed out. It could be that the copyright owner, I mean, this instance couldn't have lost anywhere near what the actual statutory damages. Yeah. But the statutory damages are also there to deter actions of infringement. And it is possible that this copyright owner in your Super Bowl example, or in the other example could have lost that money. That was the copyright owner's ability to make that sale. And that sale has been taken away. Okay. Your time is up. We'll give you a minute of rebuttal. Thank you. Okay. Thank you. Good morning, Matthew Gershman for the appellees. May it please the court. Initially, I'd just like to give the court some context for what happened here. And in this case, there were no actual damages to speak of, none claimed. And when it came time for the plaintiff to point to infringer profits, he could only point to his ballpark $5,500. And so the plaintiff is seeking different ways to try to multiply this case into what would be a windfall. With that context in mind, I want to take a shot at the MSJ issue. I'd like to make a run at that because there's one issue that plaintiffs counsel does not address, and it would resolve this completely as it is an independent basis for affirmance. And that is that the discovery, it was, excuse me, it was conclusively established in the discovery based on the failure to timely respond to requests for admissions that the plaintiff had no evidence to support his claims, including that he had no evidence that we ever violated a section 1202 claim. Look, the district court did not in any respect rely on, they moved, or at least they asked in their response of papers to be relieved of the admissions and the district court didn't rely on them at all, is that right? Incorrect, Your Honor. And I'll tell you why. The district court gave the plaintiff's ban for the doubt and looked at what he submitted, but then also did note that the plaintiff's gamesmanship supported it. They did not ask for relief from admissions. They simply claimed that there were no deemed admissions, which is incorrect as a matter of the law. Under federal rule of civil procedure . . . But if the district court agreed that what was thought the admissions were operative, all they had to say is the admissions were operative, go home. Exactly. Which is not at all what he said. He could have done that. So it seemed to me there was inferentially a revocation of the, or a withdrawal of the admissions. Which was not possible actually. So the rule requires that the plaintiff needed, if he, the rule leaves an escape hatch for someone in the plaintiff's position, that escape hatch is you file a motion for relief and you have to show good cause. That's why you have to bring the motion. You have to establish good cause, which is not so easy to do in the Ninth Circuit as illustrated by the Conlin case that I cited in the papers. The plaintiff here elected not to do it. Our view of that would be for abuse of discretion, right? If the district court's ruling on a motion, had one been brought, would be reviewed for abuse of discretion. The plaintiff just simply never brought that motion here. Well, the district court could have regarded him as doing so, no? Actually, no. Not in this circuit. Because he didn't file a separate piece of paper? Is that what you're saying? Yeah. Yes, Your Honor. Even though he asked for it? He actually didn't ask for relief from the admissions. But in the Ninth Circuit, and this is stated in the Conlin case, you do have to file a motion. The plaintiff relies, the plaintiff's position that he can just put it in his opposition is based on two Tenth Circuit cases that predate Conlin. And Conlin is Ninth Circuit, and it says you have to bring a motion. But in practice, the plaintiff didn't have evidence anyway, which brings me to the... I don't understand why you say he didn't ask for it. His motion, his opposition to the summary judgment is in any case, admissions should be withdrawn under FRCP 36B. Why isn't that a request to withdraw them? Because the plaintiff never offered, as he is required to do, never offered draft proposed responses. Simply never did that. I understand that, but you told me that he didn't ask to withdraw it. He did ask to withdraw it. He did not ask to withdraw deemed admissions because he claimed he had not been deemed to admit them in the first place. And then as a fallback, he offered that. Correct. I mean, this is not a good way to argue with the court. The answer to my question was, yes, he did ask to withdraw it. Because he did ask to withdraw. I apologize to the court if I misunderstood. I didn't misunderstand. No, if I misunderstood, I apologize. But let's get then to the ruling on the 1202 claim. Well, I have one concern, particularly from the vantage point of a district court. It's really difficult to ascertain willfulness or intent without some type of factual record, and if we, you know, following Judge Berzon, if we don't look at the request for admissions, there was no evidence that this district judge had, you know, on the issue of willfulness or intent. How is it that you can defend this case not going to a jury on something that's fact-driven as willfulness or intent? In fact, willfulness is something that can be decided on summary judgment. The district court did cite a case explaining that, and this court in the case called Kaplan, which I cited in the brief, this court affirmed a summary judgment against a claim of scienter, which of course is an intentional state of mind. But we did meet the burden here as to the willfulness on partial summary judgment in two very conventional ways. The first being the discovery, but I'll set that aside. The second is we submitted our own evidence showing that we had procedures in place, which we followed, and those procedures were designed to avoid infringement. Well, they were very strange procedures, if that's what they were trying to avoid, because they never asked the party whether there was, whether they had the copyright at all, and whether somebody else did. That's not the Declaration of Bromage Aid. Well, she said they should have known this, but why? I looked at the form. It didn't say anything. It just said, do you approve it? It didn't even ask him anything about copyrights. That's just the approval form, and that's plaintiff's interpretation of the approval form. No, it's what it says. I looked at it. Let's try again to get a straight answer to a straight question. Okay. I looked at the form. It doesn't say that. You're correct, Your Honor. That's the form. What I'd like to turn to then is what Bromage Aid explains in her declaration. And again, we're talking about our state of mind here. So, speaking of state of mind, what about Sega Enterprises and UMG recorders? They both say that a party's state of mind is a factual issue that's not usually susceptible to summary judgment. And I've been sitting on the district court for 19 years. I kind of understand how that works. Unless there is no genuine dispute of material facts. Absolutely. That's kind of elementary standard. And so, I think what would be helpful then to understand how that happened here in this instance is the plaintiff's response to the separate statement, which is where the rubber meets the road and the plaintiff has to say, here's the evidence that creates a dispute. That's page 731 of the excerpts of record. And in that, you'll see time after time after time, it's undisputed, undisputed, undisputed, undisputed. Only a few instances towards the end where the plaintiff claims a dispute. But then when you look behind that. What about Jade's email where she said, we don't want to use any of Glenn Friedman's photos for Run DMC. He owns all the rights to the photos and he's really not interested in using them for really expensive to get clearance for. That doesn't create a genuine issue of material fact. It's what they thought, because that appears to tell me that they knew that there was something wrong with using those photos. And actually, there is no evidence that we knew that the photos we were using belong to Mr. Friedman. There's only a couple of times. But you knew that some DMC photos belong to Mr. Friedman. He didn't ask. Well, here's how it came up to us. Here's how the information came to us. There's there's only one photo where we were told he owns this. Sorry. He took the Run DMC photo and that appears in the TOR book. The TOR book. No, but this other email that Judge Marbley is talking about, evidence is that you knew that those were RMC photos, right? And the second email, the ones they were referring to. Yes. So you knew that some of the RMC photos were Friedman photos, some of them, not necessarily. So you knew that he took some RMC photos. Well, yeah, what it had. Yes. What had happened was three days earlier, we were trying to put out merchandise with a picture of a different artist named Ice T. And then we were told during the using the clearance procedures that we had in place, we were told that's a Friedman photo. So at that point, we did not go forward until we had the understanding that Ice T's management had reached an agreement to separately compensate Mr. Friedman. And so three days later, when pictures came in from this other person, junk food, the junk food retailer, saying we'd like to make some merchandise with these pictures, didn't have any identification of who it was. She actually she sent it back. She she blocked this from being done because she said, we're not we're not going to go through this with Mr. Friedman. That shows an intent to not infringe. That was her state of mind, not to infringe. But doesn't it also show an understanding that he took some RMC photos? Yes, but there is no. The question of whether we could have done something more is something that the plaintiff asserts, but it is not part of what we brought the motion towards. The motion was only directed towards what plaintiff had the burden to prove, which was this case, the statutory damages. So we talk about that. Thank you. I did want to turn to that. First, I have to I have to tell the court up front, the court doesn't need to reach plaintiffs argument about 104 supposed other infringers out there. And there's a couple of reasons why. First, this idea that we would be liable jointly for the actions of 104 other people was not a claim asserted in the operative complaint. The Third Amendment complaint is at page 100, 1078 in the excerpts of record. There was no assertion that we would be liable for the acts of others. None at all. For context, this was only injected into the case after plaintiff had lost the partial summary judgment ruling below. It was an effort to multiply the case into some sort of windfall. But then here's another reason why. Even then, when plaintiff injected the issue into the case, he made no offer of proof that these 104 other people out there actually were infringers. And I heard counsel concede that, yes, these other people out there, in your Super Bowl example, these other people there would have to be infringers. There was no offer of proof of that. The only offer of proof here was that we sold to 104 people. That's just our infringement. And he's assuming. But that wasn't the basis of the district court's ruling, right? So that would have to go back. That is the district court made a pure statutory interpretation, not based on an absence in the record. And if he changed it, presumably he could allow them to supplement the record. So that's kind of I understood your first point. But as to the second point, it seems to me it's somewhat premature. You're correct. The district judge did make the ruling on the statute and how it applies. And I guess what I I guess I have two main questions about your statutory interpretation. One is how do we how could we reach it after Columbia? And two is if we accepted it, wouldn't we have to accept the fact that it applied equally whether there were individual infringers or a joint and several infringers? And then don't we run into the problem that was pointed out is why does all that language doing there anyway? Why didn't it just why did it just stop with respect to any one work period? I'll take the Columbia Pictures question first, if I may. So this court does not need to take on Columbia Pictures, doesn't need to reject it. It just doesn't apply on these facts because because in Columbia Pictures, unlike here, all the infringers, whether they were upstream or downstream, were joined in the case determined to be jointly jointly liable in certain instances. So that determination was before the court and could have been made. It just didn't exist here. That was not possible. So you're basically saying what I was suggesting before, i.e. Columbia Pictures only applies to circumstances in which the downstream infringers are sued or are in the case and determined to be liable. That is the only circumstance there where Columbia Pictures found that. Judge Owens, 50 million people situation, you'd have to have 50 million defendants. Only if only if you want to see if you could do it, I'm sorry, but if you had the 50 million defendants, you could actually apply the statute. Well, my personal opinion is in that circumstance, had that existed, then they would try to apply Columbia Pictures. And I would say Columbia Pictures is wrong. I personally think it's wrong. But what I'm suggesting to the court is that's not this case. So this court doesn't have to take on Columbia Pictures. But if we ruled, and I understand what you're saying, if we ruled the way you're suggesting, we would still leave hanging out there the possibility that in Judge Owens hypothetical, there would be billions of dollars in damages, but we just wouldn't deal with it. For another day. There are other courts that have addressed it. And there is the Louis Vuitton case that I cited in the brief, which is much closer to these facts. I mean, the way that Judge Fitzgerald dealt with it by essentially saying it's a lot of, if it's mass retailing, I don't know how you would do that under statute. It seems to me the statute either applies or it doesn't apply. But my preferred argument was the statutory interpretation. Just reading the language of the statute, it doesn't require complete joint and several liability regarding everyone. But aren't I, am I right? That if you go that route, then you have to take the same position with regard to any one infringer as individually liable, because it's the any that you're, that you're looking at. So you'd have to take the position that, and I don't, it could work with the statute, but you do have this problem about why do you have all the language then, that what the statute is saying is that for all the infringements in an action for any one work, whether or not there's, as long as there's one infringer liable individually or two or more infringers liable jointly and separately, there's still only one statutory damage. And you'd have to, therefore you'd have to be able to buy into the notion that, that if there were three completely independent infringers, there's still only one statutory damage. Is that right? Or am I wrong about that? Incorrect. Because, because what the statute is saying is you only collapse the separate infringement awards into one. If there's multiple infringers who are jointly and severally, if there's any joint and several liability. The infringer is exactly the same for which any one infringer is liable individually or for which any two or more infringers are liable jointly and severally. And it's the any that I understand you're hanging your head on and the any appears in both phrases. The any is, is what we're focused on in the briefing. And, and the any is what shows the court that this was a statute of limitation to, not a statute for one thing. But it was in both phrases, both the individual phrase and the jointly and severally phrase. Yes. Because if there is no joint and several liability, in other words, there's a difference between separate television stations, like in Columbia, all operating completely independently, airing who's the boss episodes without permission. Each of them just happened to be joined for convenience in the case. There'd be a separate award. That's the first part of the statute. But then the, the statutory scheme says, if you, what it's saying is if the plaintiff elects to go the route of statutory damages, rather than trying to prove up actuals, if you go the easier shortcut route of statutory damages, there are drawbacks. And the drawback is you can't multiply if there's any joint and several liability in this, in the sphere of what happened here. Right. You haven't dealt with that problem, but thanks. You tried. It's very interesting. It's very strange language. I thank the court for its time. Thank you, counsel. Thank you, your honor. Two points here. First of all, I believe I misspoke when I spoke before. I said the deposition of Mr. Krasner wasn't taken. That's the problem when you have an appellate attorney in the trial attorney here, trial attorney tells me, in fact, his deposition was taken. And just one of the sentence was, we asked Mr. Krasner, are you aware where the images that appear on the calendar were obtained from? I don't know. So I'm told that we took his deposition and asked, where did you get the images? And he said, I don't know. So yes, we did take the deposition. We did try to find out. They said, I don't know. So where do we go? And that's why we have the particular situation. Okay. So I apologize for misspeaking to the court. No, sometimes we screw up. The next thing that I did want to talk about, because I think this is very important and this is very important on the multiple damages award. Your honor, I understand very much. You're concerned. You're a Superbowl concern. Can I give you another example just to think about on this? This is a real life example. You ever see the movie Expendables 3? I missed that one. I'm aware of the movie. Okay. Expendables 3. Somebody took a copy of the print, made multiple copies and put it on the internet. Multiple people made other copies and it basically destroyed the opening. You had a hundred million dollar loss there on the picture. So obviously if you're the plaintiff and you're going to bring an action for a hundred million dollars. Well, but you can sue a hundred million dollars against one party and you may be able to do that here. That's an actual loss. But if you're looking at. The statute contemplates it because it allows you to pursue actual damages. Right. It does allow you to pursue actual damages. But in these particular situations. Why should they get seven gazillion dollars? Because, because, yeah, because the reason for the statutory damages is when it's difficult for the plaintiff to prove actual damages. They get this award. It's there as a disincentive. So Congress did. And the reason is to disencourage these claims and to make it easier for the plaintiff. I don't mean to say this, but Congress discusses these things when they make these statutes. And sometimes there may be hard examples. One of the. That's an interesting point. Can you cite to what Congress said in enacting this statute that would justify a $3 million award in this case under the facts of this? I can't cite you to. I haven't looked at the legislative history on this. I can cite you to what Nimmer says. Wrote the treatise. But you didn't look at the legislative history when you wrote the treatise? I wrote a treatise on licensing law. Not on damages. If you ask me about licensing law, I can tell you in great detail. All right. Licensing law. But Nimmer wrote the treatise on this and Nimmer, the copyright expert, said this is exactly what you get in the Nimmer treatise. And that's what was cited in Columbia. Front of problem of what if there weren't three infringers, there were 17 billion. Yeah. He doesn't confront that problem. But the thing is here, if you, the issue is if there were 17 billion and all 17 billion were in court, I don't think there's any doubt that you would say that you could get 17 billion separate statutory damages against each one if there's no joint and several liability. And we're between the individual infringers. I am in fact questioning that. That's what I'm trying to get. What are both of you to focus on? Yeah. Yes. I can get it. If I have, if we were to sue every single one of these retailers and bring every single retailer into court, okay. And then I think, and each retailer engaged in an act of infringement by reselling the infringement goods. Well, of course I could get a statutory damage award against each individual infringer. They've engaged in infringing conduct. It doesn't say you get one award per work, but against the infringer, if I have a work, no, it's per infringement per work, but it doesn't actually say against that, that, that each individual infringer is liable for an inter, for you get infringed with respect to one work for which any one infringer is liable. Let's assume the following, she's liable, but it doesn't say that you then get a separate award for that, for the each infringer, for which, for against, for one infringer is liable. Let me just ask this question. Let's assume I have a movie, okay? Joe Blow in A goes in and makes an unauthorized copy of that movie and infringes that movie. Joe B, who's totally unrelated, makes an unauthorized copy and, and sells that movie. I sued Joe A and B in the same action. If I sued them in separate actions, I'd get an individual award against each one. Why don't I get an individual award against each one when I sue them both in the same action? Of course I do, because they're separate acts for which each is separately liable. Did you still have to prove willful? But I don't know if that's what the statute means. I think it says here for which any one infringer is liable. It says with respect to one work for which any one infringer is liable. If I have one work and I have one party that makes an infringement, that's an award. And there has to be willfulness with, with respect to each infringement. Well, if I get a willfulness damage award, yes. I can get a statutory damage award without willfulness, but I have to get the willfulness. I'm going to have to prove willfulness. But then we'd be in the trillions as opposed to the billions. But I mean, if I have 4 million willful infringers who willfully infringed the copyright, and I brought each one of them into court, I couldn't get an award against each one? Well, it's a question of would it be actual or statutory? I mean, that's more of this thing ultimately. I don't think anyone's saying you couldn't get actual damage against each one. The question is, is the statutory, but statutory damages are there to compensate the copyright owner. And also as a deterrent effect, Congress gave us statutory damages as an alternative. If Congress only wanted to give us actual, they would have said so, but they gave us there because that's the alternative for the copyright owner. Somebody wrote this rather opaque sentence and knows what it means. Okay. Well, I think if I may, I think the Nimmer Treatise, if I can refer to my other colleague, probably knows. Can I just say one more thing, if I may? Just very, very, very quickly. I'm sorry you didn't ask me about the CMI provision. I was extensively involved in that and I could have waxed eloquent, but thank you, Your Honor, for your time. Thank you both for your arguments and a very interesting case. The case of Friedman versus Leibniz Merchandise is submitted. The last case has been vacated and so we are in recess. Thank you.
judges: Berzon, Owens, Marbley